Roger A. Denning, SBN 228998, denning@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
Scott A. Penner, SBN 253716, penner@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Phone:  858-678-5070 / Fax: 858-678-5099

Frank E. Scherkenbach, SBN 142549, scherkenbach@fr.com
Fish & Richardson P.C.
One Marina Park Dr.
Boston, MA  02210
Phone:  617-542-5070 / Fax:  617-542-8906

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESMED INC., a Delaware Corporation, RESMED CORP, a Minnesota Corporation, and RESMED LTD, an Australian Corporation, <br><br> Plaintiffs, <br> v. <br><br> BMC MEDICAL CO., LTD., a Chinese Corporation, 3B PRODUCTS, L.L.C. a Florida Limited Liability Company, and 3B MEDICAL, INC., a Florida Corporation, <br> Defendants. | Case No.  **'13CV1246 MMA WMC** <br> _____ <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br><br> **JURY TRIAL DEMANDED** |

Case No. _____

Plaintiffs ResMed Inc., ResMed Corp, and ResMed Ltd (collectively "Plaintiffs" or "ResMed") hereby file this complaint against Defendants BMC Medical Co., Ltd., 3B Products, L.L.C., and 3B Medical, Inc. and allege as follows:

1.     Plaintiff ResMed Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business in San Diego, California.

2.     Plaintiff ResMed Corp is a corporation organized under the laws of the state of Minnesota with its principal place of business in San Diego, California.

3.     Plaintiff ResMed Ltd is a corporation organized under the laws of Australia, having its principal place of business in Bella Vista, New South Wales, Australia.

4.     ResMed Corp and ResMed Ltd are, respectively, direct and indirect subsidiaries of ResMed Inc.

5.     As used herein, the term "Plaintiffs" or "ResMed" means individually and/or collectively ResMed Inc., ResMed Corp, and ResMed Ltd.

6.     On information and belief, Defendant BMC Medical Co., Ltd. ("BMC") is a corporation organized under the laws of the country of China with its principal place of business at 5/F Main Building, No.19 Gucheng Street West, Shijingshan, Beijing 100043, China.

7.     On information and belief, Defendant 3B Medical, Inc. ("3B Medical") is the U.S. subsidiary of BMC. On information and belief, 3B Medical is a corporation organized under the laws of the state of Florida with its principal place of business at 21301 US Highway 27,Lake Wales, FL 33859

8.     On information and belief, Defendant 3B Products, L.L.C. ("3B Products") is a limited liability company organized under the laws of the state of Florida with its principal place of business at 21301 US Highway 27, Lake Wales, FL 33859.

9.     As used herein, the term "3B" means collectively 3B Medical and 3B Products.

10.     As used herein, the term "Defendants" means individually and/or collectively BMC and 3B.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over the claims pleaded herein under 28 U.S.C. §§ 1331, 1338(a), and 2201(a) because the actions below concern a federal question arising under the patent laws of the United States, including 35 U.S.C. § 271.

12.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c) and 1400(b) because, among other reasons, Defendants are subject to personal jurisdiction in this judicial district and have committed acts of infringement in this judicial district or will imminently commit acts of infringement in this judicial district.

13.     Upon information and belief, Defendants have placed infringing products and/or will place infringing products into the stream of commerce by shipping those products into this judicial district and/or by knowing that such products would be shipped into this judicial district.  Defendants' established distribution network distributes accused products directly to customers located in this district.  For those products soon to be released in the United States, Defendants' established distribution network would distribute the accused products directly to customers located in this district.

14.     For example, upon information and belief, BMC's established distribution network distributes accused products to intermediary suppliers like 3B, who distribute the products nationally, including in this district.  By importing into the United States, shipping into, selling, offering to sell, and/or using products that infringe the patents-in-suit in this district, or by inducing or causing those acts to occur, Defendants have transacted and continue to transact business and perform

work and services in this district, have supplied and continue to supply services and things in this district, have caused and continue to cause injury and damages in this district by acts and omissions in this district, and have caused and continue to cause injury and damages in this district by acts or omissions outside of this district while deriving substantial revenue from services or things used or consumed within this district, and will continue to do so unless enjoined by this Court.

## THE PATENTS

15.     ResMed Ltd is the owner by assignment of all right, title, and interest in and to United States Patent No. 7,159,587 entitled "Respiratory Mask Having Gas Washout Vent And Gas Washout Vent Assembly For Respiratory Mask," (hereinafter "the '587 patent"), which was duly and legally issued on January 9, 2007.  The '587 patent is valid, enforceable, and currently in full force and effect. A copy of the '587 patent is attached as Exhibit A.

16.     ResMed Inc. is the exclusive licensee of the '587 patent and has exclusively sublicensed the patent to ResMed Corp, the U.S. sales subsidiary.

17.     ResMed Ltd is the owner by assignment of all right, title, and interest in and to United States Patent No. 7,487,772 entitled "Ergonomic And Adjustable Respiratory Mask Assembly With Elbow Assembly," (hereinafter "the '772 patent"), which was duly and legally issued on February 10, 2009.  The '772 patent is valid, enforceable, and currently in full force and effect.  A copy of the '772 patent is attached as Exhibit B.

18.     ResMed Inc. is the exclusive licensee of the '772 patent and has exclusively sublicensed the patent to ResMed Corp, the U.S. sales subsidiary.

19.     ResMed Ltd is the owner  by assignment of all right, title, and interest in and to United States Patent No. 7,614,398 entitled "Humidifier With Structure To Prevent Backflow Of Liquid Through The Humidifier Inlet," (hereinafter "the '398 patent"), which was duly and legally issued on November 10, 2009.  The

1    '398 patent is valid, enforceable, and currently in full force and effect.  A copy of
2    the '398 patent is attached as Exhibit C.

3        20.    ResMed Inc. is the exclusive licensee of the '398 patent and has
4    exclusively sublicensed the patent to ResMed Corp, the U.S. sales subsidiary.

5        21.    ResMed Ltd is the owner  by assignment of all right, title, and interest
6    in and to United States Patent No. 7,938,116 entitled "Ergonomic And Adjustable
7    Respiratory Mask Assembly With Headgear Assembly," (hereinafter
8    "the '116 patent"), which was duly and legally issued on May 10, 2011.  The '116
9    patent is valid, enforceable, and currently in full force and effect.  A copy of the
10   '116 patent is attached as Exhibit D.

11       22.    ResMed Inc. is the exclusive licensee of the '116 patent and has
12   exclusively sublicensed the patent to ResMed Corp, the U.S. sales subsidiary.

13       23.    ResMed Ltd is the owner  by assignment of all right, title, and interest
14   in and to United States Patent No. 7,341,060 entitled "Ergonomic And Adjustable
15   Respiratory Mask Assembly With Headgear Assembly," (hereinafter
16   "the '060 patent"), which was duly and legally issued on March 11, 2008.  The '060
17   patent is valid, enforceable, and currently in full force and effect.  A copy of the
18   '060 patent is attached as Exhibit E.

19       24.    ResMed Inc. is the exclusive licensee of the '060 patent and has
20   exclusively sublicensed the patent to ResMed Corp, the U.S. sales subsidiary.

21       25.    ResMed Ltd is the owner  by assignment of all right, title, and interest
22   in and to United States Patent No. 8,312,883 entitled "Nasal Assembly," (hereinafter
23   "the '883 patent"), which was duly and legally issued on November 20, 2012.  The
24   '883 patent is valid, enforceable, and currently in full force and effect.  A copy of
25   the '883 patent is attached as Exhibit F.

26       26.    ResMed Inc. is the exclusive licensee of the '883 patent and has
27   exclusively sublicensed the patent to ResMed Corp, the U.S. sales subsidiary.

28

27.     As used herein, the term "Patents-in-Suit" means individually and/or collectively the '587 patent, the '772 patent, the '060 patent, the '883 patent, the '116 patent, and the '398 patent.

## BACKGROUND

28.     ResMed is a leading developer, manufacturer and distributor of medical equipment for treating, diagnosing, and managing sleep-disordered breathing and other respiratory disorders. The company is dedicated to developing innovative products to improve the lives of those who suffer from these conditions and to increasing awareness among patients and healthcare professionals of the potentially serious health consequences of untreated sleep-disordered breathing (sometimes referred to as "SDB").  Since its founding in 1989, ResMed has focused on developing and commercializing systems for the treatment of obstructive sleep apnea ("OSA"), a major subset of SDB.  ResMed's development of innovative therapies for the treatment of OSA has resulted in over 3,000 patents granted or pending worldwide, and its product line incorporates technology that is a highly effective and proven way to treat OSA.

29.     ResMed's portfolio of SDB products includes flow generators, humidifiers, diagnostic products, mask systems, headgear and other accessories, including, for example, certain sleep-disordered breathing treatment full face masks, including the Quattro FX, Quattro FX for Her, and Mirage Quattro.  ResMed's SDB products also include certain sleep-disordered breathing treatment nasal masks, including the Mirage FX, Mirage FX for Her, Mirage Liberty, Mirage Micro, Mirage Activa LT and Mirage Vista.  ResMed's SDB products also include certain sleep-disordered breathing treatment nasal pillows, including the Swift FX, Swift FX for Her, Swift FX Bella Gray, Swift FX Bella, Swift LT for Her, and Mirage Swift II.  In addition, ResMed's SDB products include certain sleep-disordered breathing treatment systems that consist in part of a flow generator, such as the multiple variations of ResMed's S9 flow generator.

30.     ResMed marks its patents on some products and marks all of its products on its website at:  www.resmed.com/ip.

31.     On information and belief, BMC, on its own and/or through its subsidiaries, is in the business of manufacturing, packaging, importing, selling, offering to sell, and/or distributing a variety of sleep-disordered breathing treatment systems and components thereof including (a) flow generators, including but not limited to, BMC's CPAP machines, such as the BMC-630A and BMC-630C ("the Accused Machines"); (b) nasal pillows, including, but not limited to, BMC's Willow product line ("the Accused Nasal Pillows"); and (c) masks, including, but not limited to BMC's iVolve product line ("the Accused Nasal Masks").  As used hereinafter, the phrase "Accused Products" shall mean individually and collectively the Accused Machines, the Accused Nasal Masks and the Accused Nasal Pillows.

32.     On information and belief, in March 2013, Defendants imported an iVolve mask into the United States where it was displayed at a trade show in Las Vegas, NV.  On information and belief, this was done in anticipation of offering for sale and selling the iVolve in the United States.

33.     On information and belief, Defendants have completed the creation of marketing materials, including specifications and user manuals, for the iVolve. Defendants have also created multiple webpages, accessible in the United States, and in this jurisdiction, marketing the iVolve.  On information and belief, Defendants have undertaken this activity in anticipation of offering to sell and selling the Accused Nasal Masks in the United States.

34.     On information and belief, BMC offers for sale, sells, licenses, and/or distributes the Accused Products in the United States, including within this district, and/or imports the Accused Products into the United States.

35.     3B is an importer and seller of durable medical equipment such as sleep-disordered breathing treatment systems and components thereof.  3B markets and sells the Accused Products in the United States.

Case No. _____

36.   On information and belief, 3B obtains the Accused Products from BMC and sells them in the United States and this district.

37.   On information and belief, 3B offers for sale, sells, licenses, and/or distributes the Accused Products in the United States, including within this district, and/or imports the Accused Products into the United States.

38.   On information and belief, Defendants were aware of ResMed's products that practice the patents identified in this Complaint.  On information and belief, because Defendants were aware of ResMed's products, Defendants were also aware of ResMed patents as a result of patent marking, including the marking on ResMed's website.   On information and belief, Defendants' acts of infringement of the patents identified below have occurred with knowledge of ResMed's rights in its patents or with willful blindness thereto.

## FIRST CLAIM FOR RELIEF

## BMC'S INFRINGEMENT OF U.S. PATENT NO. 7,159,587

39.   The allegations of Paragraphs 1-38 are incorporated herein by reference.

40.   BMC has directly infringed the claims of the '587 patent, literally and/or under the doctrine of equivalents, by using, offering to sell, and/or selling within the United States, and/or importing into the United States, the Accused Nasal Masks and the Accused Nasal Pillows.

41.   ResMed is well-known in the industry for making and selling SDB products and ResMed is well-known in the industry to be an innovator.  ResMed also marks its products with its patents.  Therefore, on information and belief, BMC either must have known about the '587 patent or must have been willfully blind to it at the time they engaged in their infringing activities and, in any event, was aware of the '587 patent at least as early as the service date of this complaint.

42.   On information and belief, BMC has induced and continues to induce infringement of the '587 patent by actively encouraging customers and others to

import, sell and/or use the Accused Nasal Masks and the Accused Nasal Pillows in the United States with knowledge that such import, sale or use would infringe the '587 patent.  On information and belief, those customers and others in fact infringed the '587 patent by importing, selling and/or using the Accused Nasal Masks and the Accused Nasal Pillows in the United States.

43.    As a result of BMC's infringement of the '587 patent, ResMed has suffered and will continue to suffer damage.  ResMed is entitled to recover from BMC the damages adequate to compensate for such infringement, which have yet to be determined.

44.    BMC's acts of infringement have caused and will continue to cause irreparable harm to ResMed unless and until enjoined by this Court.

## SECOND CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF BMC'S INFRINGEMENT OF U.S. PATENT NO. 7,159,587

45.    The allegations of Paragraphs 1-38 are incorporated herein by reference.

46.    A substantial controversy exists between BMC and ResMed regarding the Accused Nasal Masks which, when imported into the United States, sold, offered for sale, or used within the United States, would  infringe literally, and/or under the doctrine of equivalents, the '587 patent.

47.    On information and belief, BMC has taken active steps to promote the Accused Nasal Masks in the United States, including in this jurisdiction, in preparation for actual sales.  For example, BMC has created product marketing materials and a website, accessible in the United States, including within this jurisdiction, regarding the Accused Nasal Masks.  Moreover, BMC has actively promoted the product in the United States by displaying and marketing the Accused Nasal Masks at trade shows, including at least one in March 2013 in Las Vegas, NV.

48.    The controversy is of sufficient immediacy and reality to warrant the issuance of declaratory judgment.

49.    On information and belief, BMC will use at least its established distribution network in the United States, which includes 3B, to import and sell the Accused Nasal Masks.  As such, BMC's actions would induce infringement of the '587 patent by actively encouraging customers and others to import, sell and/or use the Accused Nasal Masks in the United States with knowledge that such import, sale or use would infringe the '587 patent.  On information and belief, those customers and others would in fact infringe the '587 patent by importing, selling and/or using the Accused Nasal Masks in the United States.

50.    If BMC is permitted to infringe the '587 patent, ResMed will suffer damage.  ResMed would be entitled to recover from BMC the damages adequate to compensate for such infringement, which have yet to be determined.

51.    BMC's acts of infringement will cause irreparable harm to ResMed unless and until enjoined by this Court.

## THIRD CLAIM FOR RELIEF
## BMC'S INFRINGEMENT OF U.S. PATENT NO. 7,487,772

52.    The allegations of Paragraphs 1-38 are incorporated herein by reference.

53.    BMC has directly infringed the claims of the '772 patent, literally and/or under the doctrine of equivalents, by using, offering to sell, and/or selling within the United States, and/or importing into the United States, the Accused Nasal Masks and the Accused Nasal Pillows.

54.    ResMed is well-known in the industry for making and selling SDB products and ResMed is well-known in the industry to be an innovator.  ResMed also marks its products with its patents.  Therefore, on information and belief, BMC either must have known about the '772 patent or must have been willfully blind to it

at the time they engaged in their infringing activities and, in any event, was aware of the '772 patent at least as early as the service date of this complaint.

55.     On information and belief, BMC has induced and continues to induce infringement of the '772 patent by actively encouraging customers and others to import, sell and/or use the Accused Nasal Masks and the Accused Nasal Pillows in the United States with knowledge that such import, sale or use would infringe the '772 patent.  On information and belief, those customers and others in fact infringed the '772 patent by importing, selling and/or using the Accused Nasal Masks and the Accused Nasal Pillows in the United States.

56.     As a result of BMC's infringement of the '772 patent, ResMed has suffered and will continue to suffer damage.  ResMed is entitled to recover from BMC the damages adequate to compensate for such infringement, which have yet to be determined.

57.     BMC's acts of infringement have caused and will continue to cause irreparable harm to ResMed unless and until enjoined by this Court.

## FOURTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF BMC'S INFRINGEMENT OF U.S. PATENT NO. 7,487,772

58.     The allegations of Paragraphs 1-38 are incorporated herein by reference.

59.     A substantial controversy exists between BMC and ResMed regarding the Accused Nasal Masks which, when imported into the United States, sold, offered for sale, or used within the United States, would  infringe literally, and/or under the doctrine of equivalents, the '772 patent.

60.     On information and belief, BMC has taken active steps to promote the Accused Nasal Masks in the United States, including in this jurisdiction, in preparation for actual sales.  For example, BMC has created product marketing materials and a website, accessible in the United States, including within this

Case No. _____

jurisdiction, regarding the Accused Nasal Masks. Moreover, BMC has actively promoted the product in the United States by displaying and marketing the Accused Nasal Masks at trade shows, including at least one in March 2013 in Las Vegas, NV.

61.     The controversy is of sufficient immediacy and reality to warrant the issuance of declaratory judgment.

62.     On information and belief, BMC will use at least its established distribution network in the United States, which includes 3B, to import and sell the Accused Nasal Masks. As such, BMC's actions would induce infringement of the '772 patent by actively encouraging customers and others to import, sell and/or use the Accused Nasal Masks in the United States with knowledge that such import, sale or use would infringe the '772 patent. On information and belief, those customers and others would in fact infringe the '772 patent by importing, selling and/or using the Accused Nasal Masks in the United States.

63.     If BMC is permitted to infringe the '772 patent, ResMed will suffer damage. ResMed would be entitled to recover from BMC the damages adequate to compensate for such infringement, which have yet to be determined.

64.     BMC's acts of infringement will cause irreparable harm to ResMed unless and until enjoined by this Court.

## FIFTH CLAIM FOR RELIEF

## BMC'S INFRINGEMENT OF U.S. PATENT NO. 7,341,060

65.     The allegations of Paragraphs 1-38 are incorporated herein by reference.

66.     BMC has directly infringed the claims of the '060 patent, literally and/or under the doctrine of equivalents, by using, offering to sell, and/or selling within the United States, and importing into the United States, the Accused Nasal Pillows.

67.     ResMed is well-known in the industry for making and selling SDB products and ResMed is well-known in the industry to be an innovator. ResMed

Case No. _____

also marks its products with its patents.  Therefore, on information and belief, BMC either must have known about the '060 patent or must have been willfully blind to it at the time they engaged in their infringing activities and, in any event, was aware of the '060 patent at least as early as the service date of this complaint.

68.    On information and belief, BMC has induced and continues to induce infringement of the '060 patent by actively encouraging customers and others to import, sell and/or use the Accused Nasal Pillows in the United States with knowledge that such import, sale or use would infringe the '060 patent.  On information and belief, those customers and others in fact infringed the '060 patent by importing, selling and/or using the Accused Nasal Pillows in the United States.

69.    As a result of BMC's infringement of the '060 patent, ResMed has suffered and will continue to suffer damage.  ResMed is entitled to recover from BMC the damages adequate to compensate for such infringement, which have yet to be determined.

70.    BMC's acts of infringement have caused and will continue to cause irreparable harm to ResMed unless and until enjoined by this Court.

## SIXTH  CLAIM FOR RELIEF
## BMC'S INFRINGEMENT OF U.S. PATENT NO. 7,938,116

71.    The allegations of Paragraphs 1-38 are incorporated herein by reference.

72.    BMC has directly infringed the claims of the '116 patent, literally and/or under the doctrine of equivalents, by using, offering to sell, and/or selling within the United States, and/or importing into the United States, the Accused Nasal Pillows.

73.    ResMed is well-known in the industry for making and selling SDB products and ResMed is well-known in the industry to be an innovator.  ResMed also marks its products with its patents.  Therefore, on information and belief, BMC either must have known about the '116 patent or must have been willfully blind to it

at the time they engaged in their infringing activities and, in any event, was aware of the '116 patent at least as early as the service date of this complaint.

74.    On information and belief, BMC has induced and continues to induce infringement of the '116 patent by actively encouraging customers and others to import, sell and/or use the Accused Nasal Pillows in the United States with knowledge that such import, sale or use would infringe the '116 patent.  On information and belief, those customers and others in fact infringed the '116 patent by importing, selling and/or using the Accused Nasal Pillows in the United States.

75.    As a result of BMC's infringement of the '116 patent, ResMed has suffered and will continue to suffer damage.  ResMed is entitled to recover from BMC the damages adequate to compensate for such infringement, which have yet to be determined.

76.    BMC's acts of infringement have caused and will continue to cause irreparable harm to ResMed unless and until enjoined by this Court.

## SEVENTH  CLAIM FOR RELIEF
## BMC'S INFRINGEMENT OF U.S. PATENT NO. 8,312,883

77.    The allegations of Paragraphs 1-38 are incorporated herein by reference.

78.    BMC has directly infringed the claims of the '883 patent, literally and/or under the doctrine of equivalents, by using, offering to sell, and/or selling within the United States, and/or importing into the United States, the Accused Nasal Pillows.

79.    ResMed is well-known in the industry for making and selling SDB products and ResMed is well-known in the industry to be an innovator.  ResMed also marks its products with its patents.  Therefore, on information and belief, BMC either must have known about the '883 patent or must have been willfully blind to it at the time they engaged in their infringing activities and, in any event, was aware of the '116 patent at least as early as the service date of this complaint.

80.     On information and belief, BMC has induced and continues to induce infringement of the '883 patent by actively encouraging customers and others to import, sell and/or use the Accused Nasal Pillows in the United States with knowledge that such import, sale or use would infringe the '883 patent.  On information and belief, those customers and others in fact infringed the '883 patent by importing, selling and/or using the Accused Nasal Pillows in the United States.

81.     As a result of BMC's infringement of the '883 patent, ResMed has suffered and will continue to suffer damage.  ResMed is entitled to recover from BMC the damages adequate to compensate for such infringement, which have yet to be determined.

82.     BMC's acts of infringement have caused and will continue to cause irreparable harm to ResMed unless and until enjoined by this Court.

## EIGHTH  CLAIM FOR RELIEF

## BMC'S INFRINGEMENT OF U.S. PATENT NO. 7,614,398

83.     The allegations of Paragraphs 1-38 are incorporated herein by reference.

84.     BMC has directly infringed the claims of the '398 patent, literally and/or under the doctrine of equivalents, by using, offering to sell, and/or selling within the United States, and/or importing into the United States, at least the Accused Machines.

85.     ResMed is well-known in the industry for making and selling SDB products and ResMed is well-known in the industry to be an innovator.  ResMed also marks its products with its patents.  Therefore, on information and belief, BMC either must have known about the '398 patent or must have been willfully blind to it at the time they engaged in their infringing activities and, in any event, was aware of the '398 patent at least as early as the service date of this complaint.

86.     On information and belief, BMC has induced and continues to induce infringement of the '398 patent by actively encouraging customers and others to

import, sell and/or use the Accused Machines in the United States with knowledge that such import, sale or use would infringe the '398 patent.  On information and belief, those customers and others in fact infringed the '398 patent by importing, selling and/or using the Accused Machines in the United States.

87.     As a result of BMC's infringement of the '398 patent, ResMed has suffered and will continue to suffer damage.  ResMed is entitled to recover from BMC the damages adequate to compensate for such infringement, which have yet to be determined.

88.     BMC's acts of infringement have caused and will continue to cause irreparable harm to ResMed unless and until enjoined by this Court.

## NINTH CLAIM FOR RELIEF
## 3B'S INFRINGEMENT OF U.S. PATENT NO. 7,159,587

89.     The allegations of Paragraphs 1-38 are incorporated herein by reference.

90.     3B has directly infringed the claims of the '587 patent, literally and/or under the doctrine of equivalents, by using, offering to sell, and/or selling within the United States, and/or importing into the United States, the Accused Nasal Masks and the Accused Nasal Pillows.

91.     ResMed is well-known in the industry for making and selling SDB products and ResMed is well-known in the industry to be an innovator.  ResMed also marks its products with its patents.  Therefore, on information and belief, 3B either must have known about the '587 patent or must have been willfully blind to it at the time they engaged in their infringing activities and, in any event, was aware of the '587 patent at least as early as the service date of this complaint.

92.     On information and belief, 3B has induced and continues to induce infringement of the '587 patent by actively encouraging customers and others to import, sell and/or use the Accused Nasal Masks and the Accused Nasal Pillows in the United States with knowledge that such import, sale or use would infringe the

'587 patent.  On information and belief, those customers and others in fact infringed the '587 patent by importing, selling and/or using the Accused Nasal Masks and the Accused Nasal Pillows in the United States.

93.    As a result of 3B's infringement of the '587 patent, ResMed has suffered and will continue to suffer damage.  ResMed is entitled to recover from 3B the damages adequate to compensate for such infringement, which have yet to be determined.

94.    3B's acts of infringement have caused and will continue to cause irreparable harm to ResMed unless and until enjoined by this Court.

**TENTH CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT OF 3B'S INFRINGEMENT OF U.S.**

**PATENT NO. 7,159,587**

95.    The allegations of Paragraphs 1-38 are incorporated herein by reference.

96.    A substantial controversy exists between 3B and ResMed regarding the Accused Nasal Masks which, when imported into the United States, sold, offered for sale, or used within the United States would  infringe literally, and/or under the doctrine of equivalents, the '587 patent.

97.    On information and belief, 3B has taken active steps to promote the Accused Nasal Masks in the United States, including in this jurisdiction, in preparation for actual sales.  For example, 3B has created product marketing materials and a website, accessible in the United States, including within this jurisdiction, regarding the Accused Nasal Masks.  Moreover, 3B has actively promoted the product in the United States by displaying and marketing the Accused Nasal Masks at trade shows, including at least one in March 2013 in Las Vegas, NV.

98.    The controversy is of sufficient immediacy and reality to warrant the issuance of declaratory judgment.

99.     On information and belief, 3B will use at least its established distribution network in the United States to import and sell the Accused Nasal Masks.  As such, 3B's actions would induce infringement of the '587 patent by actively encouraging customers and others to import, sell and/or use the Accused Nasal Masks in the United States with knowledge that such import, sale or use would infringe the '587 patent.  On information and belief, those customers and others would in fact infringed the '587 patent by importing, selling and/or using the Accused Nasal Masks in the United States.

100.    If 3B is permitted to infringe the '587 patent, ResMed will suffer damage.  ResMed would be entitled to recover from 3B the damages adequate to compensate for such infringement, which have yet to be determined.

101.    3B's acts of infringement will cause irreparable harm to ResMed unless and until enjoined by this Court.

## ELEVENTH CLAIM FOR RELIEF
## 3B'S INFRINGEMENT OF U.S. PATENT NO. 7,487,772

102.    The allegations of Paragraphs 1-38 are incorporated herein by reference.

103.    3B has directly infringed the claims of the '772 patent, literally and/or under the doctrine of equivalents, by using, offering to sell, and/or selling within the United States, and/or importing into the United States, the Accused Nasal Masks and the Accused Nasal Pillows.

104.    ResMed is well-known in the industry for making and selling SDB products and ResMed is well-known in the industry to be an innovator.  ResMed also marks its products with its patents.  Therefore, on information and belief, 3B either must have known about the '772 patent or must have been willfully blind to it at the time they engaged in their infringing activities and, in any event, was aware of the '772 patent at least as early as the service date of this complaint.

105.   On information and belief, 3B has induced and continues to induce infringement of the '772 patent by actively encouraging customers and others to import, sell and/or use the Accused Nasal Masks and the Accused Nasal Pillows in the United States with knowledge that such import, sale or use would infringe the '772 patent.  On information and belief, those customers and others in fact infringed the '772 patent by importing, selling and/or using the Accused Nasal Masks and the Accused Nasal Pillows in the United States.

106.   As a result of 3B's infringement of the '772 patent, ResMed has suffered and will continue to suffer damage.  ResMed is entitled to recover from 3B the damages adequate to compensate for such infringement, which have yet to be determined.

107.   3B's acts of infringement have caused and will continue to cause irreparable harm to ResMed unless and until enjoined by this Court.

## TWELFTH CLAIM FOR RELIEF
## DECLARATORY JUDGMENT OF 3B'S INFRINGEMENT OF U.S. PATENT NO. 7,487,772

108.   The allegations of Paragraphs 1-38 are incorporated herein by reference.

109.   A substantial controversy exists between 3B and ResMed regarding the Accused Nasal Masks which, when imported into the United States, sold, offered for sale, or used within the United States would  infringe literally, and/or under the doctrine of equivalents, the '772 patent.

110.   On information and belief, 3B has taken active steps to promote the Accused Nasal Masks in the United States, including in this jurisdiction, in preparation for actual sales.  For example, 3B has created product marketing materials and a website, accessible in the United States, including within this jurisdiction, regarding the Accused Nasal Masks.  Moreover, 3B has actively

Case No. _____

promoted the product in the United States by displaying and marketing the Accused Nasal Masks at trade shows, including at least one in March 2013 in Las Vegas, NV.

111.   The controversy is of sufficient immediacy and reality to warrant the issuance of declaratory judgment.

112.   On information and belief, 3B will use at least its established distribution network in the United States to import and sell the Accused Nasal Masks.  As such, 3B's actions would induce infringement of the '772 patent by actively encouraging customers and others to import, sell and/or use the Accused Nasal Masks in the United States with knowledge that such import, sale or use would infringe the '772 patent.  On information and belief, those customers and others would in fact infringed the '772 patent by importing, selling and/or using the Accused Nasal Masks in the United States.

113.   If 3B is permitted to infringe the '772 patent, ResMed will suffer damage.  ResMed would be entitled to recover from 3B the damages adequate to compensate for such infringement, which have yet to be determined.

114.   3B's acts of infringement will cause irreparable harm to ResMed unless and until enjoined by this Court.

## THIRTEENTH CLAIM FOR RELIEF
### 3B'S INFRINGEMENT OF U.S. PATENT NO. 7,341,060

115.   The allegations of Paragraphs 1-38 are incorporated herein by reference.

116.   3B has directly infringed the claims of the '060 patent, literally and/or under the doctrine of equivalents, by using, offering to sell, and/or selling within the United States, and/or importing into the United States, the Accused Nasal Pillows.

117.   ResMed is well-known in the industry for making and selling SDB products and ResMed is well-known in the industry to be an innovator.  ResMed also marks its products with its patents.  Therefore, on information and belief, 3B either must have known about the '060 patent or must have been willfully blind to it

at the time they engaged in their infringing activities and, in any event, was aware of the '060 patent at least as early as the service date of this complaint.

118.   On information and belief, 3B has induced and continues to induce infringement of the '060 patent by actively encouraging customers and others to import, sell and/or use the Accused Nasal Pillows in the United States with knowledge that such import, sale or use would infringe the '060 patent.  On information and belief, those customers and others in fact infringed the '060 patent by importing, selling and/or using the Accused Nasal Pillows in the United States.

119.   As a result of 3B's infringement of the '060 patent, ResMed has suffered and will continue to suffer damage.  ResMed is entitled to recover from 3B the damages adequate to compensate for such infringement, which have yet to be determined.

120.   3B's acts of infringement have caused and will continue to cause irreparable harm to ResMed unless and until enjoined by this Court.

## FOURTEENTH  CLAIM FOR RELIEF
### 3B'S INFRINGEMENT OF U.S. PATENT NO. 7,938,116

121.   The allegations of Paragraphs 1-38 are incorporated herein by reference.

122.   3B has directly infringed the claims of the '116 patent, literally and/or under the doctrine of equivalents, by using, offering to sell, and/or selling within the United States, and/or importing into the United States, the Accused Nasal Pillows.

123.   ResMed is well-known in the industry for making and selling SDB products and ResMed is well-known in the industry to be an innovator.  ResMed also marks its products with its patents.  Therefore, on information and belief, 3B either must have known about the '116 patent or must have been willfully blind to it at the time they engaged in their infringing activities and, in any event, was aware of the '116 patent at least as early as the service date of this complaint.

124.   On information and belief, 3B has induced and continues to induce infringement of the '116 patent by actively encouraging customers and others to import, sell and/or use the Accused Nasal Pillows in the United States with knowledge that such import, sale or use would infringe the '116 patent.  On information and belief, those customers and others in fact infringed the '116 patent by importing, selling and/or using the Accused Nasal Pillows in the United States.

125.   As a result of 3B's infringement of the '116 patent, ResMed has suffered and will continue to suffer damage.  ResMed is entitled to recover from 3B the damages adequate to compensate for such infringement, which have yet to be determined.

126.   3B's acts of infringement have caused and will continue to cause irreparable harm to ResMed unless and until enjoined by this Court.

### FIFTEENTH  CLAIM FOR RELIEF

### 3B'S INFRINGEMENT OF U.S. PATENT NO. 8,312,883

127.   The allegations of Paragraphs 1-38 are incorporated herein by reference.

128.   3B has directly infringed the claims of the '883 patent, literally and/or under the doctrine of equivalents, by using, offering to sell, and/or selling within the United States, and/or importing into the United States, the Accused Nasal Pillows.

129.   ResMed is well-known in the industry for making and selling SDB products and ResMed is well-known in the industry to be an innovator.  ResMed also marks its products with its patents.  Therefore, on information and belief, 3B either must have known about the '883 patent or must have been willfully blind to it at the time they engaged in their infringing activities and, in any event, was aware of the '116 patent at least as early as the service date of this complaint.

130.   On information and belief, 3B has induced and continues to induce infringement of the '883 patent by actively encouraging customers and others to import, sell and/or use the Accused Nasal Pillows in the United States with

Case No. _____

knowledge that such import, sale or use would infringe the '883 patent.  On information and belief, those customers and others in fact infringed the '883 patent by importing, selling and/or using the Accused Nasal Pillows in the United States.

131.    As a result of 3B's infringement of the '883 patent, ResMed has suffered and will continue to suffer damage.  ResMed is entitled to recover from 3B the damages adequate to compensate for such infringement, which have yet to be determined.

132.    3B's acts of infringement have caused and will continue to cause irreparable harm to ResMed unless and until enjoined by this Court.

### SIXTEENTH  CLAIM FOR RELIEF
### 3B'S INFRINGEMENT OF U.S. PATENT NO. 7,614,398

133.    The allegations of Paragraphs 1-38 are incorporated herein by reference.

134.    3B has directly infringed the claims of the '398 patent, literally and/or under the doctrine of equivalents, by using, offering to sell, and/or selling within the United States, and/or importing into the United States, at least the Accused Machines.

135.    ResMed is well-known in the industry for making and selling SDB products and ResMed is well-known in the industry to be an innovator.  ResMed also marks its products with its patents.  Therefore, on information and belief, 3B either must have known about the '398 patent or must have been willfully blind to it at the time they engaged in their infringing activities and, in any event, was aware of the '398 patent at least as early as the service date of this complaint.

136.    On information and belief, 3B has induced and continues to induce infringement of the '398 patent by actively encouraging customers and others to import, sell and/or use the Accused Machines in the United States with knowledge that such import, sale or use would infringe the '398 patent.  On information and

belief, those customers and others in fact infringed the '398 patent by importing, selling and/or using the Accused Machines in the United States.

137.   As a result of 3B's infringement of the '398 patent, ResMed has suffered and will continue to suffer damage.  ResMed is entitled to recover from 3B the damages adequate to compensate for such infringement, which have yet to be determined. 3B's acts of infringement have caused and will continue to cause irreparable harm to ResMed unless and until enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, ResMed prays that this Court enters judgment and provides relief as follows:

(a)     That BMC has directly infringed the Patents-in-Suit.

(b)     That BMC has induced infringement of the Patents-in-Suit;

(c)     A declaration that BMC's importation, use, sale, or offer for sale of the Accused Nasal Masks infringes and would infringe the '587 Patent and the '772 Patent.

(d)     That BMC, and its officers, agents, servants, employees, and those in active concert or participation with them directly or indirectly, be enjoined from infringing the Patents-in-Suit;

(e)     That BMC pay to ResMed the damages resulting from BMC's infringement of the Patents-in-Suit, together with interest and costs, and all other damages permitted by 35 U.S.C. § 284;

(f)     That BMC be ordered to account for additional damages for any and all periods of infringement not included in the damages awarded by the Court or jury, including specifically any time periods between any order or verdict awarding damages and entry of final judgment;

(g)     That 3B has directly infringed the Patents-in-Suit.

(h)     That 3B has induced infringement of the Patents-in-Suit;

(i)     A declaration that 3B's importation, use, sale, or offer for sale of the Accused Nasal Masks infringes and would infringe the '587 Patent and the '772 Patent.

(j)     That 3B, and its officers, agents, servants, employees, and those in active concert or participation with them directly or indirectly, be enjoined from infringing the Patents-in-Suit;

(k)     That 3B pay to ResMed the damages resulting from BMC's infringement of the Patents-in-Suit, together with interest and costs, and all other damages permitted by 35 U.S.C. § 284;

(l)     That 3B be ordered to account for additional damages for any and all periods of infringement not included in the damages awarded by the Court or jury, including specifically any time periods between any order or verdict awarding damages and entry of final judgment; and

(m)     That ResMed be awarded such other equitable or legal relief as this Court deems just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

138.   Pursuant to Federal Rule of Civil Procedure 38, ResMed demands a jury trial on all issues so triable.


Dated:  May 29, 2013                          FISH & RICHARDSON P.C.


                                              By: */s/ Roger A. Denning*
                                                     Roger A. Denning

                                              Attorneys for Plaintiffs RESMED INC.,
                                              RESMED CORP, and RESMED LTD